GARY M. RESTAINO
United States Attorney
District of Arizona
DENISE ANN FAULK
Assistant U.S. Attorney
State Bar No. 12700
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Email: denise.faulk@usdoj.gov
Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Pierre Smith,<br><br>   Plaintiff,<br><br>vs.<br><br>Heidi Haight Biehler, et al.,<br><br>   Defendants. | CV-21-00262-TUC-RM<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUGMENT ON EXHAUSTION** |

Defendants Haight-Biehler, Bass and Howard, by and through undersigned counsel, hereby move for summary judgment on Plaintiff's First Amended Complaint based on Plaintiff's failure to exhaust administrative remedies before filing suit as the Prison Litigation Reform Act (PLRA) requires. This motion is based on the following memorandum of points and authorities, the separately filed statement of facts and exhibit and all matters of record.

**Memorandum of Points and Authorities**

**I.  Background**

  **A.  Plaintiff**

Plaintiff Pierre Smith is a former federal inmate who arrived at the United States Penitentiary (USP Tucson) in Tucson, Arizona, on January 17, 2020. (Statement of Facts (SOF) 1.) Plaintiff was a District of Columbia inmate serving a 7-year term of imprisonment for armed robbery. (SOF 2.) He has been released from custody. (SOF 3.)

### B. First Amended Complaint

On December 30, 2021, Plaintiff signed the First Amended Complaint (FAC), making allegations against Defendants Haight-Biehler, Bass and Howard relating to his health care and pain management at USP Tucson. (Doc. 17.) This Court screened the FAC and determined that, liberally construed, the FAC stated an Eighth Amendment medical care claim against Defendants Haight-Biehler, Bass and Howard. (Doc. 18 at 4.)

### C. Bureau's Administrative Remedy Program

The Bureau's Administrative Remedy Program is designed to allow an inmate to seek formal review of an issue relating to any aspect of his confinement. 28 C.F.R. § 542.10(a). The program contains four levels of review. Initially, an inmate is required to attempt to informally resolve his grievance with Unit Team staff. 28 C.F.R. § 542.13(a). If the inmate is unable to resolve the grievance informally, he may submit an Administrative Remedy Request to the Warden using the BP-9 Form within 20 calendar days following the date on which the basis for the request occurred. 28 C.F.R. §§ 542.13(a), 542.14. If the inmate is not satisfied with the Warden's response, he may submit an Appeal on the BP-10 Form to the Regional Director within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15. When appealing sensitive issues, the inmate may submit an appeal (BP-10) directly to the Regional Director. 28 C.F.R. § 542.14(d)(1). If the inmate is not satisfied with the Regional Director's response, he may submit a Central Office Administrative Remedy Appeal (BP-11) to the Director, National Inmate Appeals, in the Office of the General Counsel within 30 days of the date the Regional Director signed the response. *Id.* The appeal to the General Counsel is the final level of administrative review. *Id.* An inmate, therefore, has not administratively exhausted his claim until he has filed a BP-11 with the General Counsel and (1) the General Counsel has responded on the merits to the inmate's BP-11 or (2) the General Counsel has failed to respond within the time allotted. 28 C.F.R. § 542.18. (SOF 6.) Only after this procedure is completely exhausted is a prisoner authorized to file suit in district court. 42 U.S.C. § 1997e(a). (SOF 6, 7.)

The Administrative Remedy Coordinator at any level may reject and return to the inmate without response a Request for Administrative Remedy or appeal that does not meet procedural requirements as outlined in the Code of Federal Regulations. *See* 28 C.F.R. § 542.17(a). (SOF 6.)

The Administrative Remedy Program Statement regarding the administrative remedy procedures is available to USP Tucson inmates in the main law library and in the Electronic Law Library in the Special Housing Unit (SHU). (SOF 9.) Additionally, when an inmate arrives at USP Tucson, he participates in an Admission and Orientation (A&O) Program, during which he is given instructions on the Administrative Remedy Program, how to obtain and submit the appropriate forms and how to exhaust claims through all levels of the Administrative Remedy Program. (SOF 10.) He also is given a copy of the A&O Handbook, which includes information on the Administrative Remedy Program. (SOF 11.)

An inmate may obtain the administrative remedy or appeal forms from, and submit completed forms to, any Unit Team member. (SOF 12.) The Unit Team is comprised of the Unit Manager, Case Manager, Correctional Counselor and Unit Secretary. (*Id*.) While the "Correctional Counselor will initial, date, and write the inmate's last name on the top right hand section of the form for accountability purposes[,]" there is no requirement that an inmate provide a reason for needing an administrative remedy form to obtain that form. (SOF 13.)

Inmates may utilize an Inmate Request to Staff Member (form BP-S148), commonly called a Cop-Out, to make any written request, including that he believes that his Unit Team is not providing him with administrative remedy forms or is not properly processing administrative remedy forms. (SOF 14.) He can make the requests to any staff member, including Associate Wardens and the Warden. (SOF 15.) An inmate may file an inmate request to staff (cop-out), informal grievance (BP-8), or formal grievance (BP-9, BP-10, or BP-11) while in general population or while housed in the SHU. *See* 28 C.F.R. § 541.31(o) ("You can submit a formal grievance challenging any aspect of your

confinement in the SHU through the Administrative Remedy Program[.]"). (SOF 15.)

**D. Plaintiff's Administrative Remedies**

Between arriving at USP Tucson on January 17, 2020, and signing the FAC on December 30, 2021, Plaintiff filed four administrative remedies or appeals. (SOF 18.) None exhausted the claims in the FAC against Haight-Biehler, Bass or Howard.

Plaintiff initiated the administrative remedy process regarding pain medication in February 2020. (SOF 19.) Plaintiff initiated the process with an Informal Resolution Form dated February 18, 2020, which referenced a January 30, 2020, conversation with Dr. Biehler. (SOF 20.) Plaintiff was requesting "medical to re-instate my medication because I have not violated any controlled substance policy or agreement." (SOF 21.) Plaintiff's request was denied because "A review of your medical records has determined that you do not meet the criteria for this pain medication, as FCC Tucson physicians practice under their own license and not the last facilities. Your case will be discussed at the next Pain Management Committee for an alternative treatment plan." (SOF 22.)

Plaintiff filed Remedy No. 1020963-F1 three months later, on May 20, 2020. (SOF 23.) In the request, Plaintiff stated that he has unrelenting physical pain. (SOF 24.) He stated he had not "broken any policys [sic] on narcotic pain medication, and [he] did sign one with Dr. Biehler 1-30-20." (SOF 25.) The Request for Administrative Remedy was rejected on the basis that the request was untimely. (SOF 26.) The Rejection Notice stated that "institution … requests (BP-09) must be received w/20 days of the event complained about." (SOF 27.)

Plaintiff appealed the rejection and filed Remedy No. 1020963-R1 on August 14, 2020. (SOF 28.) The appeal to the Regional Director was rejected, and Plaintiff was instructed to "provide staff verification to the institution that you are not responsible for the untimely filing of your appeal." (SOF 29.) Plaintiff did not file an appeal to the Office of General Counsel relating to this remedy. (SOF 30.)

Plaintiff filed Remedy No. 1050241-F1 on October 1, 2020. (SOF 31.) He asserted that psychology staff demonstrated racial preferences towards white inmates.

(SOF 32.) The remedy was rejected because the "BP-9 [had] no specific request for remedy." (SOF 33.)

Plaintiff appealed and filed Remedy No. 1050241-R1 on January 7, 2021. (SOF 34.) The appeal to the Regional Director was rejected, and Plaintiff was directed to "make corrections and resubmit [his] BP-9." (SOF 35.) Plaintiff did not file an appeal to the Office of General Counsel relating to this remedy. (SOF 36.)

In his FAC, Plaintiff admitted that administrative remedies are available at USP Tucson and asserted that he submitted a request for administrative relief and appealed it to the highest level. (Doc. 17 at 3.)

## II. The Court should grant Summary Judgment because Plaintiff failed to exhaust his administrative remedies prior to filing suit.

### A. Legal Standard for Motion for Summary Judgment

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The nonmovant need not establish a material issue of fact conclusively in its favor.

*First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968). However, he must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (internal citation omitted, emphasis in original). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

Additionally, if "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. In deciding the motion, the Court must consider whether Plaintiff's claims are supported by plausible *factual* statements or by conclusory allegations or directly contradicted by the record. *Soremekun*, 509 F.3d at 984; *Scott*, 550 U.S. at 380.

**B.    Prisoners are required to exhaust administrative remedies.**

The PLRA provides that no prisoner shall bring an action "with respect to prison conditions" under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001). Federal prisoners suing must first exhaust inmate grievance procedures. *Porter*, 534 U.S. at 524. Exhaustion is a prerequisite to suit and all "available" remedies must be exhausted, "[e]ven when the prisoner seeks relief not available in grievance proceedings." *Id.*

Administrative exhaustion protects an administrative agency's authority, discouraging disregard of its procedures and permitting it to correct its own errors. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Administrative exhaustion also promotes efficiency by permitting matters to be handled administratively, where a resolution often can be reached more quickly than in the courts. *Id.* Additionally, administrative exhaustion promotes judicial economy by "reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the

preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

The inmate must complete the administrative review process in accordance with the applicable rules. *See Woodford*, 548 U.S. at 94. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Proper exhaustion under § 1997e(a) requires following "all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (citations and internal quotation marks omitted) (emphasis in original). To properly exhaust, an inmate must comply with the grievance procedures, rules and deadlines of the institution where he is incarcerated. *Jones*, 549 U.S. at 218.

An inmate must fully exhaust all administrative remedies *before* he files the complaint. *McKinney v. Carey*, 311 F.3d 1198, 1199-200 (9th Cir. 2002).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. "All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (*quoting Booth,* 532 U.S. at 739). Exhaustion is now mandatory, and there is no discretion to excuse it. *Id.*

"Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). Failure to exhaust should be raised in a motion for summary judgment: "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166.

The defendant has the burden to show that "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. Once the defendant has met this burden, the burden shifts to the plaintiff to demonstrate "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

**C.  Plaintiff failed to exhaust administrative remedies before filing the FAC.**

On January 17, 2020, Plaintiff was given an Inmate Admission & Orientation (A&O) Handbook,[1] which describes the administrative remedy process. (SOF 4.) The A&O Handbook provides detailed information on how inmates may obtain administrative remedy forms, including that inmates may obtain forms from their Correctional Counselor or any Unit Team member.[2] (SOF 10, 12.)

As detailed above, the record clearly shows that Plaintiff did not appeal properly an administrative remedy regarding the issues in the FAC to the highest level before filing suit, choosing instead to skip the process and file suit. Each of Plaintiff's remedies and appeals was rejected due to his refusal to follow the rules, and he failed to follow the instructions to cure any of the rejections.

Plaintiff initiated a remedy regarding pain medication in February 2020, referencing a January 30, 2020, meeting with Dr. Haight-Biehler. (SOF 19-20.) He was required to file the BP-9 within twenty days of January 30, 2020. (SOF 6.) Instead, Plaintiff did not file the BP-9 until months later, on May 20, 2020. (SOF 23.) His remedy was properly rejected, and he failed to follow the directions to cure it.

Moreover, under Bureau regulations, no administrative remedy is fully exhausted until the inmate has submitted a proper BP-11 to the Central Office and received a response or the time to respond has expired. (SOF 6-7.) Plaintiff did not submit any BP-11's to the Central Office. (SOF 30, 36.) Plaintiff failed to complete the administrative review process in accordance with the applicable rules. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 94. He did not comply with the "agency's deadlines and other critical procedural rules." *See id.* at 90. Thus, he did not properly follow the steps, "so that the agency [could] address[] the issues on the merits." *See id*. (citations and internal quotation marks omitted). Plaintiff failed to exhaust administrative remedies before filing

---

[1] Plaintiff acknowledged receipt of the A&O Handbook on January 17, 2020. (SOF 4.)

[2] The Unit Team is comprised of the Unit Manager, Case Manager, Correctional Counselor and Unit Secretary. (SOF 12.)

the FAC.  Accordingly, this Court should grant judgment for Defendants on the FAC.

## III. Conclusion

Plaintiff failed to comply with the PLRA's requirement that he exhaust available administrative remedies before filing the FAC.  The Court should grant summary judgment for all Defendants for Plaintiff's failure to exhaust administrative remedies.  Based on the foregoing, Defendants respectfully request that this Court grant summary judgment on the FAC as to all Defendants for Plaintiff's failure to exhaust administrative remedies.

RESPECTFULLY SUBMITTED:  December 29, 2023.

          GARY M. RESTAINO
          United States Attorney
          District of Arizona

          *s/ Denise Ann Faulk*
          DENISE ANN FAULK
          Assistant U.S. Attorney

Copy of the foregoing served via
U.S. mail on December 29, 2023, to

Pierre Smith
4700 W Coyle Rd., #203
Owings Mills, MD 21117

*s/ L. Startup*
/ MSJ-Exhaustion